NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0045n.06
Filed: January 18, 2006

No. 04-1924

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARILYN D. MCGEE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| SCHOOLCRAFT COMMUNITY COLLEGE, et. al., | ) | |
| | ) | **O P I N I O N** |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: MOORE, ROGERS, McKEAGUE

**McKeague, Circuit Judge.** This case arises out of Plaintiff Marilyn McGee's dismissal from Schoolcraft Community College's Occupational Therapy Assistant program. Plaintiff brought a complaint against the college, the clinics who employed her as part of the program, and several individual employees of those entities alleging various state and federal claims. All of the defendants filed motions for dismissal and/or summary judgment. The district court granted these motions and dismissed all claims against all defendants. For the reasons set forth below, we affirm the judgment of the district court.

**I. BACKGROUND**

Plaintiff enrolled in Schoolcraft Community College's ("SCC") Occupational Therapy Assistant ("OTA") program in the fall of 1995. Plaintiff began a required clinical fieldwork assignment at Glacier Hills Nursing Center ("Glacier Hills") in the fall of 1996. Plaintiff withdrew

from the Glacier Hills placement on October 28, 1996, believing that she was about to be expelled from the placement. The next day Plaintiff met with Cheryl Hawkins, a SCC instructor, who produced a "Faculty Student Advisement Form" alleging Plaintiff had unexcused absences and had engaged in "inappropriate clinical behavior." Linnea Atkins, the director of occupational therapy at Glacier Hills, sent SCC a letter on November 1, 1996, describing problems in Plaintiff's fieldwork.

Plaintiff returned to SCC in the fall of 1997 subject to certain conditions, including regular completion of a guideline checklist and supervision by a SCC-hired mentor. Plaintiff began a new fieldwork assignment at Rainbow Rehabilitation Center ("Rainbow"). On October 17, 1997, SCC's OTA program director Nancy Vandeweile-Milligan, Rainbow fieldwork supervisor Therese Mensah, and Plaintiff's mentor Kimberly Sherwood met with Plaintiff and terminated her placement at Rainbow, citing problems in Plaintiff's fieldwork performance such as scheduling and organizational difficulties and inappropriate behavior with patients. Mensah completed a review of Plaintiff's work (the "Wiscouncil Level I Fieldwork Evaluation Form") which was unfavorable to Plaintiff.

Plaintiff filed an appeal of her termination from the Rainbow fieldwork assignment and subsequent dismissal from the OTA program through SCC's seven-step Appeals Procedure for Academic Matters. A new individual or panel upheld Plaintiff's termination at each of the first six steps. After the denial of Plaintiff's appeal at step six on September 8, 1998, SCC chose to offer Plaintiff a chance to return to the OTA program anyway, subject to various conditions. The appeals procedure provided Plaintiff ten working days to appeal to the Board of Trustees ("Board") at step

seven. Plaintiff discussed and met with various SCC administrators regarding conditional reinstatement. On February 19, 1999, Robert Pearce, SCC Associate Dean of College Centers, wrote Plaintiff a letter, again offering reinstatement and stating that Plaintiff had the right to appeal this decision.

On March 18, 1999, Plaintiff wrote to Sharon Braun, SCC Director of College Centers, stating that Plaintiff intended to appeal her termination to step seven of the appeals process. Braun sent Plaintiff a March 25 letter telling Plaintiff that the time to appeal had passed. On April 7, Plaintiff wrote to SCC President Roger McDowell, stating she would like to present an appeal to the Board. On April 19, 1999, McDowell wrote back, again stating that the ten day time limit had passed but that the Board might elect to hear her complaint. On September 10, 1999, Plaintiff wrote to Carol Strom, chairperson of the Board, requesting that the Board hear Plaintiff's appeal. Strom replied on October 28, 1999, stating, "the Board has chosen to act in a manner consistent with the timeliness stated in [the SCC Appeals Procedure]."

Plaintiff filed her complaint in this case on October 18, 2002. Plaintiff alleges that Milligan became antagonistic toward her in December of 1995 when a teacher reduced Plaintiff's grade for turning in an assignment late and Plaintiff argued to SCC administrators, including Milligan, that the grade reduction was unfair. Plaintiff alleges that Milligan then began a concerted effort to expel Plaintiff from the OTA program. Among other things, Plaintiff alleges that she withdrew from the Glacier Hills placement when Milligan and Atkins were about to terminate her from the placement without just cause; that Milligan, Mensah, and Sherwood expelled Plaintiff from the Rainbow placement without just cause; that these terminations and unfavorable evaluations by Atkins and

Mensah were concocted as part of a conspiracy to expel Plaintiff from the OTA program; and that

SCC administrators and the Board of Trustees either explicitly or implicitly joined in this conspiracy

during the appeals process in ruling against Plaintiff.

After the close of discovery the SCC defendants filed a motion for dismissal and/or summary

judgment on all claims against both SCC and the individual defendants who were employed by SCC.

The remaining defendants–Glacier Hills, Rainbow, and their employees who were sued–also filed

motions for summary judgment. The district court dismissed the individual SCC defendants on the

basis that they had not been properly served with the summons and complaint. Then the district

court examined the various claims against SCC and held that on each claim SCC was either entitled

to summary judgment or dismissal based on Federal Rule of Civil Procedure 12(b). Finally the

district court determined that Plaintiff's claims against the Glacier Hills and Rainbow defendants

were barred because they were not brought within the applicable statutes of limitations. Plaintiff

filed a timely notice of appeal.

## II. ANALYSIS

### A.      Standard of Review

Whether the district court properly dismissed a suit pursuant to Fed. R. Civ. P. 12(b)(6) is

a question of law subject to de novo review. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir.

2005); *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358

F.3d 392, 393 (6th Cir. 2004). The court must construe the complaint in the light most favorable

to the plaintiff, accept all the factual allegations as true, *Smith*, 378 F.3d at 568, and determine

whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle

him to relief. *Roberson*, 399 F.3d at 794; *Arrow*, 358 F.3d at 393. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); *Saglioccolo*, 112 F.3d at 228-29; *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *Bovee*, 272 F.3d at 361; *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also Booker v. GTE.net*, 350 F.3d 515, 517 (6th Cir. 2003) (the court need not accept as true legal conclusions and unwarranted factual inferences); *Perry*, 324 F.3d at 848 (same).

This court also reviews an order granting summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005); *Valentine-Johnson v. Roche*, 386 F.3d 800, 807 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Valentine-Johnson*, 386 F.3d at 807. Any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). Nevertheless, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter*, 385 F.3d at 689-90; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

**B.     Claims Against the Individual SCC Defendants**

SCC's dispositive motion below argued that the district court should dismiss the individual SCC defendants for lack of proper service pursuant to Federal Rule of Civil Procedure 12(b)(5). SCC pointed out that in a previous order the district court had already ruled that the attempted service of the summons and complaint on the individual SCC defendants by delivering those documents to SCC did not comply with the requirements of Rule 4 for service on individuals. The district court agreed and dismissed these defendants based on its previous conclusion that they had not been properly served. That dismissal was proper.

Below Plaintiff argued that the delivery of a copy of the summons and complaint to SCC's offices was adequate service of the individual SCC defendants under Rule 5.  The district court agreed that the method of service complied with the requirements of Rule 5, but pointed out that service of the summons and complaint is governed by the more stringent standards of Rule 4 which were not met by the method of service employed.  This conclusion was sound.  *See* Fed. R. Civ. P. 4, 5.

Plaintiff's only argument on appeal is that delivering a copy of the summons and complaint to an agent of SCC at SCC's office was adequate service of the individual defendants pursuant to Rule 4(e).  Specifically, Plaintiff posits that since she served the individual defendants in their official capacities, their "usual place of abode" was their office at SCC.  However, this argument was not presented to the district court.  Below, Plaintiff only argued that the method of service complied with Rule 5.  This court generally will not review issues raised for the first time on appeal. *Barner v. Pilkington N. Am.*, 399 F.3d 745, 749 (6th Cir. 2005); *Lepard v. NBD Bank*, 384 F.3d 232, 236 (6th Cir. 2004); *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003). The appellate court's function is "to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Barner*, 399 F.3d at 749.  There is no reason to depart from this general rule.[1]  The district court's dismissal of the individual SCC defendants was not error.

---

[1]Even if the argument had been presented properly, there is no authority to support Plaintiff's counter-intuitive argument that an individual's office can be considered his usual place of abode for service of process pursuant to Rule 4(e).

**C.      State Law Tort Claims Against SCC**

Plaintiff asserts several state law tort claims against SCC.  SCC sought dismissal of these claims based on the argument that it is entitled to governmental immunity under Michigan law. After setting forth the applicable legal framework for determining whether an entity is entitled to governmental immunity and outlining SCC's argument, the district court observed that Plaintiff's arguments against the application of governmental immunity did not appear to apply to SCC itself, but only to the individual SCC defendants.  After making this observation, the district court found that "SCC is entitled to absolute immunity as to the state tort claims."  This ruling was not error.

In her appellate brief, the only reason Plaintiff sets forth for overturning the district court's governmental immunity ruling is that in her response to SCC's motion for summary judgment she actually did argue that SCC itself was not entitled to governmental immunity.  The appellate brief cites several sections of the response to supposedly support this argument.  However, most of the sections cited put forth arguments which are only relevant to whether each of the individual SCC defendants was entitled to immunity.  The one or two places where Plaintiff argued below that *none* of the defendants were entitled to immunity did not include any arguments addressed specifically to SCC itself.  Therefore, the factual basis of Plaintiff's argument is suspect at best.

Even if Plaintiff had challenged whether SCC was entitled to governmental immunity, that fact would not have any relevance to this appeal because the district court did not rely on the perceived absence of any argument from Plaintiff to support its ruling.  The district court merely made an observation regarding the paucity of Plaintiff's argument on the point under consideration and then proceeded to conclude the discussion of the issue by stating its holding that SCC was

entitled to governmental immunity. The most logical way to read the district court's opinion is that this holding was based on the court's application of the relevant law and facts previously set out in a fair amount of detail. Since the district court did not rely on Plaintiff's failure to oppose the governmental immunity argument, any mistake it might have made in characterizing Plaintiff's arguments, or lack thereof, did not have any impact on its holding.

In her reply appellate brief Plaintiff sets forth the additional argument that SCC is not entitled to governmental immunity because under Michigan law there is no such immunity for intentional torts or actions not taken in good faith. Even if this argument had been properly raised, it would fail because the exceptions to governmental immunity Plaintiff cites are only relevant when determining whether an individual governmental employee is entitled to governmental immunity. The Michigan Supreme Court has held that "governmental *agencies* ha[ve] a broad grant of immunity while, in contrast, the immunity extended to *individuals* is far less." *Sudul v. City of Hamtramck*, 562 N.W.2d 478, 482 (Mich. 1997) (emphasis in original). In the course of determining the scope of a governmental agency's immunity, the Michigan Supreme Court has held that "[t]here is no intentional tort exception to governmental immunity." *Smith v. Dept't of Public Health*, 410 N.W.2d 749, (Mich. 1987), *aff'd sub nom, Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Nor does the applicable statute or case law cited by Plaintiff evidence any good faith requirement in order for a government agency to be entitled to governmental immunity. Instead, Michigan courts have held that the state's governmental tort liability statute provides broad immunity for governmental agencies and that exceptions to that broad immunity must be narrowly construed. *See, e.g., Glancy v. City of Roseville*, 577 N.W.2d 897, 900 (Mich. 1998). Plaintiff has

failed to point to any legitimate exception to the broad governmental immunity SCC enjoys. Therefore, the district court did not err when it held that SCC was entitled to governmental immunity on the state law tort claims.

### D.     Conspiracy Claim

Count II of the complaint alleges a conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. § 1985(3).  The district court properly held that the complaint fails to adequately plead such a conspiracy.  To prove a conspiracy under § 1985(3) a plaintiff is required to show: "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) (internal quotations and citations omitted).  The Sixth Circuit has ruled that § 1985(3) only applies to discrimination based on race or membership in a class which is one of "those so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics."  *Volunteers Medical Clinic, Inc., v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991).  Plaintiff has acknowledged that her race was not a factor and alleged only that she belongs to a class of persons "attending an institution of higher learning in pursuit of a degree as a [Certified Occupational Therapy Assistant]."  Compl. ¶ 130.  The district court concluded that this class was not entitled to the kind of special protection which would make § 1985(3) applicable to Plaintiff's claim.

On appeal Plaintiff argues that the district court's reliance on the *Volunteers Medical Clinic* case was inappropriate because that case involved individuals who were not acting under color of

state law while in this case all defendants were acting under color of state law. While the factual

distinction is accurate, it has no legal significance here. The Supreme Court has repeatedly held that

the scope of § 1985(3) extends only to cases in which there is "some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v.*

*Breckenridge*, 403 U.S. 88, 102 (1971). This rule has been applied without reference to whether the

conspiracy alleged directly involved actions under color of state law. *See United Broth. of*

*Carpenters v. Scott*, 463 U.S. 825, 834-35 (1983).

The Sixth Circuit has ruled that § 1985(3) covers cases involving invidious discrimination

on a class basis as long as the class meets certain stringent requirements. *See Volunteers Medical*

*Clinic,* 948 F.2d at 224. The only class Plaintiff alleges she is a part of does not meet these

requirements. The group of individuals seeking a degree as a certified occupational therapy assistant

may be a relatively discrete minority, but certainly it is neither based on inherent personal

characteristics nor traditionally the subject of special protection under the Equal Protection Clause.

Nor does Plaintiff provide any argument that her pleadings meet these requirements. Consequently,

her argument that the district court's dismissal of her conspiracy claim should be overturned fails.[2]

**E.      Due Process Claim**

Count I of the complaint sets forth a claim for violation of due process but does not explicitly

specify whether it is a procedural or substantive due process challenge or both. The district court

_____

[2]Plaintiff briefly notes that even if she did not sufficiently plead that she is a member of a protected class under § 1985(3) the district court should be directed to grant her leave to amend her complaint to cure this deficiency. However, the record before the court makes it clear that any such amendment would be futile.

ruled that SCC was entitled to summary judgment on this claim without explicitly addressing whether Plaintiff's due process claim was procedural or substantive in nature. The content of the district court's analysis, however, indicates that the district court concluded that there was no genuine issue of material fact sufficient to support either a procedural or substantive due process claim. That ruling was correct on both points.

### 1. *Substantive Due Process*

In order to prevail on a substantive due process claim, a plaintiff must first establish the existence of a constitutionally protected life, liberty or property interest. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). The only interest Plaintiff claims as the basis of her due process claim is an asserted property interest in her continued enrollment in SCC's OTA program. *See* Compl. ¶ 79. The Sixth Circuit has held that in the absence of an equal protection violation there is "no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process." *Bell v. Ohio State University*, 351 F.3d 240, 251 (6th Cir. 2003). The court went on to observe that "[c]ertainly the contention that the medical college's actions were arbitrary or capricious cannot be sufficient." *Id*. Plaintiff has not alleged any equal protection violation. The interest she asserts is virtually identical to the one asserted in *Bell* which was rejected as a basis for a substantive due process claim. *See id.* Consequently, SCC is entitled to judgment as a matter of law to the extent that the complaint asserts a substantive due process claim.

### 2. *Procedural Due Process*

The district court held that "the facts establish that plaintiff received a full and fair opportunity to present her issues through the internal appeal process provided by SCC." This is the only reference the court made to the procedural aspect of Plaintiff's due process claim. Plaintiff argues that the internal process provided by SCC did not meet procedural due process requirements.

Prevailing on a procedural due process claim requires first establishing the existence of a constitutionally protected life, liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). The fact that Plaintiff has not demonstrated such an interest in the context of her substantive due process claim does not necessarily doom her procedural claim as well. Although establishing a protectable interest is a common element of both kinds of due process claims, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." *Bell v. Ohio State University*, 351 F.3d 240, 249-50 (6th Cir. 2003). The issue of whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved. Courts have avoided this issue where possible by assuming for the sake of argument that such an interest exists. *See, e.g., Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 84-85 (1978); *Bell*, 351 F.3d at 249. This practice is well-suited to the current case. Even viewed in the light most favorable to Plaintiff, the facts in the record do not establish a violation of procedural due process. Therefore, it is not necessary to determine whether Plaintiff had a protectable property interest in her continued enrollment at SCC.

In order to establish a procedural due process claim, Plaintiff must establish that the government deprived her of a protectable interest without due process of law. *Horowitz*, 435 U.S. at 82. The only protectable interest Plaintiff asserts is a property interest in her continued enrollment

in the OTA program at SCC. SCC is entitled to judgment as a matter of law because the undisputed facts show that SCC did not ultimately deprive Plaintiff of that interest. The internal process which Plaintiff assailed as constitutionally inadequate resulted in SCC repeatedly offering her an opportunity to be reinstated in the OTA program. Plaintiff chose not to accept that offer because it was not accompanied by the apologies she sought and because the offer required her to sign a letter of agreement which stated that if she failed clinical course work she would be terminated from the program.[3] The fact that the terms were not acceptable to Plaintiff does not change the fact that SCC offered to restore to her the property interest she claims she was deprived of, her continued enrollment. The restrictions on the re-instatement offer did not deprive her of this or any other interest even arguably protected by due process requirements. Consequently, there is no basis to overturn the district court's ruling that SCC was entitled to summary judgment on Plaintiff's due process claim.[4]

**F.      First Amendment Retaliation Claim**

---

[3]Plaintiff felt that this requirement did not accurately reflect the terms of the school catalogue which by her interpretation should have given her a second chance to complete fieldwork if she failed.

[4]Even if the appeals process had culminated without SCC offering Plaintiff reinstatement, there would still be no deprivation of procedural due process as long as SCC's post-deprivation appeal process offered Plaintiff a fair and meaningful opportunity to be heard. *Horowitz*, 435 U.S. at 84-85. However, the record indicates that Plaintiff may have created a genuine issue of fact regarding the fundamental fairness of the internal appeal process. She submitted testimony that the Glacier Hills letter was withheld from her until part way though the process when she was given a redacted copy, that false testimony was submitted at some levels of the appeal, and that SCC officials put pressure on at least one decision-maker to uphold the school's termination decision.

Count III of the complaint alleges that when Plaintiff continued appealing the adverse determinations, Defendants retaliated against her in violation of her First Amendment rights to speech and petition by threatening to expel her, actually expelling her, and refusing to hear her Level VII appeal. The district court properly dismissed this claim. A First Amendment retaliation claim requires the following elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The district court held that Plaintiff's complaint did not adequately allege the first element and that there was no evidence to support the second or third elements. Even assuming for the sake of argument that Plaintiff's allegations establish the first two elements, there is no evidence that SCC's decisions to expel Plaintiff and to not hear her step VII appeal were motivated by the fact that Plaintiff chose to appeal her termination from the OTA program. Since there is no evidence which would allow a reasonable jury to conclude that the third element had been met, there is no need to examine the district court's ruling on the first two elements.

**G.      Sovereign Immunity Defense**

After dismissing all of the federal law claims against SCC, the district court went on to observe that even if dismissal had not been merited on the grounds already discussed, SCC was entitled to Eleventh Amendment sovereign immunity. Plaintiff challenges this ruling on appeal.

Since there is no basis for overturning the primary bases for the district court's dismissal of the federal claims, there is no reason to scrutinize the alternative basis of sovereign immunity.[5]

## H.      Breach of Contract Claim

### 1.      Contract claim against SCC

Count XII of the complaint alleges that SCC breached various contractual duties set forth in the SCC catalogue and manuals related to the OTA program. The district court properly held that Plaintiff did not point to any language in the cited documents which constituted an unqualified promise of a student's right to be warned and evaluated prior to termination from the program. The district court also noted that the SCC catalogue contained a disclaimer which explicitly stated that its contents did not create a contract. Therefore, the district court dismissed the breach of contract count for failure to state a claim.

On appeal Plaintiff argues that the disclaimer language in the SCC catalogue does not doom her contract claim because the claim is based on language in the OTA Student Manual and the OTA Fieldwork Supervisor's Manual, neither of which contains a similar disclaimer. However, this argument was not presented to the district court. Below, Plaintiff's argument was focused on alleging that a contract was *breached* and little space was devoted to establishing the existence of

---

[5]If SCC is considered a state entity, as opposed to a municipal entity, it is entitled to sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 n.34 (1984); *Mt. Health City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). However, which side of this line a community college falls on is often a close question which depends on the particular funding structure and measure of local autonomy of the community college in question. *See United States ex. rel. Diop v. Wayne County Cmty. College Dist.*, 242 F. Supp. 2d 497, 527 (E.D. Mich. 2003). To date only one case has addressed this issue in the context of a Michigan community college. *Id.* (finding that the college in question was a state entity).

a contractual relationship. The only statement related to the latter issue was that the breach of contract claim was supported by statements in SCC's catalogue. Plaintiff did not direct the district court to the OTA student or supervisors' manuals to find the source of the alleged contract. As observed above, the appellate court's function is "to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Barner*, 399 F.3d at 749. Plaintiff has offered no argument that the district court's analysis of the original argument was flawed. Nor does an examination of the relevant portions of the record reveal any such flaw.

### 2.     *Contract Claim Against Rainbow Defendants*

The district court granted the Rainbow defendants' motion for summary judgment on the breach of contract claim on the basis that Plaintiff did not argue that claim in her response to the motion for summary judgment. On appeal Plaintiff does not question the propriety of granting summary judgment on an issue which has not been challenged, but only argues that she did oppose the Rainbow defendants' motion for summary judgment on her breach of contract claim. First, she cites a paragraph in her response which asserted that the Rainbow defendants had violated SCC's rules pertaining to grades, evaluations, and termination. However, this discussion of Rainbow's allegedly breaking the rules does not make any reference to a contractual duty established by the rules. Moreover, the discussion is part of a section in which Plaintiff is arguing that the Rainbow defendants acted in concert with the SCC defendants (in support of her conspiracy claim). The only other support for her argument that she urged the validity of her breach of contract claim is a citation to a portion of her "reply." However, this document was actually a sur-reply which was not permitted by the local rules. *See* E.D. Mich. L.R. 7.1. Nor does the record reflect that Plaintiff

sought or was granted permission to file a sur-reply. This district court apparently paid no heed to this pleading. Plaintiff cannot rely on arguments she set forth in an impermissible pleading. Since Plaintiff has failed to effectively refute the district court's conclusion that she "did not argue her breach of contract claim in her response to defendants' motions for summary judgment," there is no reason to overturn the district court's dismissal of the breach of contract claim against the Rainbow defendants.

## I.    Statutes of Limitations

The district court properly dismissed counts I through XI of the complaint against the Glacier Hills defendants and the Rainbow defendants on the basis that the statutes of limitations for those claims were not met. There is no dispute that the statute of limitations was one year for the defamation claims and three years for the remaining claims. The complaint was filed on October 18, 2002. Plaintiff only disputes the beginning point of the statutes of limitations.

All the parties agree that the statutes of limitations began to run when Plaintiff knew, or should have known, that she had been injured due to the defendants' alleged actions. *See Connelly v. Paul Ruddy's Co.*, 200 N.W.2d 70, 72 (Mich. 1972). The disagreement arises around when that occurred. According to Plaintiff, she did not suffer any cognizable injury until October 28, 1999 when she claims SCC's internal due process became complete, finalizing her termination. However, the Glacier Hills and Rainbow defendants assert that she knew or should have known of the injury she alleges they caused well before that date. Moreover, they make the legal argument that Plaintiff's pending administrative appeals did not toll the running of the statute of limitations. *Citing Roberson v. Tennessee*, 399 F.3d 792, 795 (6th Cir. 2005).

In the instant case, we need not decide what, if any, impact an ongoing administrative appeal process has on the commencement of a statute of limitations period because Plaintiff's appeal process was complete more than three years before she filed her complaint. The record shows that a letter dated March 25, 1999 informed Plaintiff that her time to continue her appeal at the seventh and final stage of the internal process had expired. In spite of this communication, Plaintiff continued her efforts to obtain a step seven appeal and submitted an appeal packet to SCC's Board of Trustees. On October 28, 1999 she received a letter stating that her stage VII appeal would not be heard because it was untimely.

Plaintiff urges that her termination was not final until the last communication she received rejecting her stage VII appeal. However, as the district court noted, Plaintiff's request to the Board to hear her step seven appeal after she had been repeatedly notified that her time to file such an appeal had expired cannot extend the accrual of her claims. *See Stewart v. United States Veterans Admin.*, 722 F. Supp. 406, 408 (W.D. Tenn. 1989); *Hull v. Local 414 of the Int'l Brotherhood of Teamsters*, 601 F. Supp. 869, 872-73 (N.D. Ind. 1985). The statutes of limitations began to run when Plaintiff knew or should have known that she suffered a cognizable injury caused by Defendants' alleged actions. At the latest, Plaintiff knew or should have known that the internal process was complete and her termination was final when she received the March 25, 1999 letter informing her that her right to the final stage of appeal had lapsed. This was more than three years before she filed this lawsuit on October 18, 2002.

Plaintiff would have this court rule that unsubstantiated optimism that an institution might later reverse its final decision coupled with continued requests to that effect allows a plaintiff to

unilaterally delay the commencement of the relevant statute of limitations. This principle is supported by neither legal precedent nor sound reasoning. Moreover, adopting this line of reasoning would make statute of limitations law extremely unwieldy and eviscerate its fundamental purpose. The district court correctly concluded that Counts I through XI against the Glacier Hills and Rainbow defendants were not filed within the applicable statutes of limitations.

### III. CONCLUSION

De novo review reveals that each of the district court's holdings was correct. All defendants were entitled to dismissal on all claims. Therefore, the decision of the district court is AFFIRMED.