**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0190n.06
Filed: April 9, 2008

**No. 07-5585**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LUE ELLA ROGERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TENNESSEE BOARD OF REGENTS, et al, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |

**Before: COLE, GIBBONS, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge**. Plaintiff appeals the district court's grant of summary judgment in this 42 U.S.C. § 1983 action. Plaintiff was dismissed from the nursing program at Walters State Community College after receiving a failing grade in a clinical nursing course. Plaintiff appealed her grade and dismissal to the administration in accordance with the procedures set forth in a student handbook. After the administration denied the appeal, plaintiff brought the instant action, alleging, among other things, a violation of her procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution. Because plaintiff was afforded constitutionally sufficient process, and because plaintiff's interest in her nursing education is not protected by substantive due process, we affirm.

Plaintiff Lue Ella Rogers is a former nursing student at Walters State Community College ("WSCC"), a Tennessee Board of Regents college. Rogers enrolled in WSCC in the fall of 2001. After successfully completing four nursing courses during the Fall 2001 and Spring 2002 semesters, Rogers failed the Nursing 2510/2511 course sequence during the Fall 2002 semester. Because WSCC's academic policy does not allow a student who failed a nursing course to progress to the next course, Rogers failed out of WSCC's nursing program. In April 2003, WSCC readmitted Rogers and allowed her to retake the Nursing 2510/2511 course sequence during the Fall 2003 semester.

Nursing 2511 is an introductory clinical course. Rogers' clinical instructor for the Fall 2003 Nursing 2511 course was Ramona Logan. The clinical rotation for the course was scheduled to begin on September 10, 2003, and to conclude on November 26, 2003, with a make-up session scheduled for December 10, 2003. On each clinical date, Rogers was assigned a patient to attend under the supervision of a practicing nurse, or "preceptor." As part of the clinical evaluation, Logan was to evaluate Rogers' competence regarding various clinical behaviors. A "Nursing Handbook" set out behaviors and skills to be learned by each student and provided an evaluation instrument for the instructor to assess a student's performance. The handbook also contained a set of guidelines for completing student evaluations. At the end of the semester, instructors were to give students a final evaluation that would serve as the basis for a course grade, and the handbook set out a process by which students could appeal their final course grade. To pass a clinical course, students were

required to receive seventy-five percent "satisfactory" marks on the final evaluation. The handbook provided that on any clinical day during which a student performed at an "unsatisfactory" level, the student would be notified that day, and that such unsatisfactory performances would be documented on a student communication form. The handbook also provided that students in danger of an unsatisfactory evaluation were to be notified by the instructor to give those students a chance to improve by the end of the semester.

At some point in November 2003, Logan issued a preliminary evaluation regarding Rogers' clinical performance. Logan advised Rogers that her clinical skills were unsatisfactory in various areas and listed several areas in which Rogers needed to improve. At no time prior to the preliminary evaluation did Logan communicate to Rogers, either orally or through a student communication form, that Rogers was in danger of receiving an unsatisfactory final performance rating. Throughout the semester, Rogers prepared and submitted to Logan "care plans" to outline Rogers' findings and nursing suggestions for assigned patients. Logan returned these plans to Rogers with comments such as "very good," "check plus," and "check." Although none of the plans advised Rogers of unsatisfactory performance during the course of the semester, Logan did annotate on Rogers' preliminary evaluation that Rogers "admitted to copying care plans from care plan books without referencing them."

On December 10, 2003, Logan gave Rogers her final course evaluation. Logan, Director of Nursing Cheryl McCall, and Barbara McNeely, the course coordinator, met with Rogers to discuss the final evaluation. Rogers received less than satisfactory marks in thirteen categories, causing her

to fall short of the seventy-five percent required to pass the course. Along with the evaluation checklist, Logan provided two explanatory attachments related to Rogers' performance rating. Although written in different terms, the attachments contain similar criticisms of Rogers' clinical performance. Among her eight peers, Rogers was the only nursing student to receive an unsatisfactory mark or a failing grade.

After receiving her final course evaluation, Rogers appealed her grade in accordance with procedures set forth in the Nursing Handbook. It is undisputed that all of the procedural requirements for the appeal were fulfilled. The handbook provided that students initiate a grade appeal through the following process:

> 1. Contact the instructor to ensure that no calculation or administrative error has occurred.

> 2. If the student believes an appeal is warranted after consulting with the instructor and the Director of Nursing, he/she must submit an appeal in writing to the Dean of Health Programs and Nursing. If the appeal cannot be satisfactorily addressed at this level, the student may forward the written appeal to the vice president for Academic Affairs. The academic vice president will review the appeal and notify the student of the decision regarding the appeal. The student, if not agreeing with the vice president's decision, may request a hearing before the college's Academic Affairs Committee. The Academic Affairs Committee will recommend to the vice president for Academic Affairs a decision regarding the appeal. The vice president for Academic Affairs will support or reverse the committee's recommendation and forward his recommendation to the president. The president's decision will be final.

Rogers' grade appeal progressed in the following sequence. On January 5, 2004, Rogers wrote to McCall to initiate the appeal. Rogers explained the basis of her appeal and included several

statements from her preceptors and classmates. On January 14, 2004, Rogers met with Logan, McNeely, and McCall to review Rogers' final evaluation. Prior to the meeting, McCall reviewed all information submitted by Rogers and discussed the materials with faculty members. At the conclusion of the meeting, McCall explained that she would uphold the grade based on Rogers' failure to achieve the requisite satisfactory marks and advised Rogers that the next step was an appeal to Dean Marty Rucker.

On January 14, 2004, Rogers delivered a letter to Dean Rucker requesting continuation of her appeal. Dean Rucker initially met with Rogers, but referred Rogers back to McCall after Rogers stated that she had not reviewed her clinical evaluation with Logan to her satisfaction. On January 21, 2004, Rogers met with Logan, McCall, and McNeely to review the clinical evaluation. Following the review, McCall again denied Rogers' appeal. Later that day, Rogers met with Dean Rucker and McNeely. Dean Rucker denied Rogers' appeal after reviewing both of Logan's written evaluations and the materials submitted by Rogers. Dean Rucker then advised Rogers that she could appeal the decision to Dr. Mary Lou Apple, the vice president for Academic Affairs.

On January 26, 2004, Rogers wrote to Dr. Apple requesting continuation of her appeal. Rogers explained the basis of her appeal and provided Dr. Apple with various information, including letters from preceptors and classmates. Dr. Apple wrote to Rogers on February 5, 2004, advising Rogers that her appeal was denied. In the letter, Dr. Apple explained that she had met with Logan, Dean Rucker, and McCall to discuss the appeal and reviewed all the information that Rogers

provided. Dr. Apple advised Rogers that she could appeal her decision to the Academic Affairs Committee.

On March 11, 2004, the Academic Affairs Committee met to consider Rogers' appeal. Rogers presented her appeal and provided to the committee all information that she wished to be considered. After questioning both Rogers and Logan, the committee unanimously voted to deny Rogers' appeal. On March 18, 2004, Dr. Apple notified Rogers of the committee's decision, stated that she concurred in that decision, and forwarded the recommendation of the committee to the President of WSCC, Dr. Jack Campbell. On March 26, 2004, Dr. Campbell met with Rogers to hear the appeal. Following the meeting, Dr. Campbell advised Rogers that he found no basis for reversing the decision of the Academic Affairs Committee. Because WSCC policy provides for only one re-application to the nursing program, Rogers was barred from re-applying to the program after her appeal was denied.

On December 10, 2004, Rogers filed in federal court this 42 U.S.C. § 1983 action, naming as defendants the Tennessee Board of Regents, its members, WSCC, and several members of the faculty and administration of WSCC. Rogers alleged that the academic dismissal from WSCC violated her procedural and substantive due process rights under the Fourteenth Amendment, and sought equitable relief in the form of readmittance to the nursing program. On September 29, 2006, defendants filed a Motion for Summary Judgment, arguing that Rogers could not establish a procedural or substantive due process claim. The district court granted defendants' motion on March 7, 2007.

Because Rogers was afforded constitutionally sufficient process, and because Rogers' interest in her nursing education is not protected by substantive due process, we affirm the district court's grant of summary judgment.

Initially, no genuine issue of material fact exists as to whether WSCC afforded Rogers constitutionally sufficient process before dismissing her from the nursing program. To succeed on a procedural due process claim under § 1983, Rogers "must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process." *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005). In cases of academic dismissal from a state educational institution,

> when the student has been fully informed of the faculty's dissatisfaction with the student's academic progress and when the decision to dismiss was careful and deliberate, the Fourteenth Amendment's procedural due process requirement has been met. No formal hearing is required for academic decisions because such academic decisions "require[] an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decisionmaking."

*Ku v. Tennessee*, 322 F.3d 431, 436 (6th Cir. 2003) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978)) (citation omitted). Here, assuming that Tennessee law provides Rogers with a constitutionally protected interest in her nursing education, *cf. Ku*, 322 F.3d at 435, the record indicates that Rogers was fully informed of her unsatisfactory clinical performance and that the decision to dismiss Rogers was made carefully and deliberately.

First, the preliminary and final evaluations completed by Logan adequately conveyed the faculty's dissatisfaction with Rogers' academic progress. The evaluations listed the areas in which Logan believed Rogers was deficient, and the preliminary evaluation informed Rogers of areas in which she needed to improve. Rogers contends that she was not afforded reasonable prior notice of her impending failure because Logan did not fill out a student communication form or otherwise notify Rogers of her deficient performance before issuing the preliminary and final evaluations. However, as *Ku* and *Horowitz* make clear, due process simply requires that the student be fully informed of the faculty's dissatisfaction. Logan's written evaluations satisfy this requirement regardless of whether Logan failed to follow certain notice procedures set out in the Nursing Handbook. *Cf. Horowitz*, 435 U.S. at 92 n.8 (disagreeing that a university's failure to follow its own rules amounts to a constitutional violation); *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986).

Second, the record indicates that the decision to dismiss Rogers from the nursing program was made carefully and deliberately. Indeed, the WSCC faculty afforded Rogers more than adequate process by providing Rogers with a formal hearing before the academic committee. The Nursing Handbook provided for a grade appeal process, and it is undisputed that the steps of that process were followed. Rogers appealed her grade through five levels of the WSCC administration and presented her case in a hearing format before an academic review board. The record indicates that Rogers initially met with Logan, McCall, and McNeely to discuss her grade. Logan was then referred to Dean Rucker for the second step of the appeal. Concerned that Rogers was not satisfied

with the explanation she received in the first meeting with Logan, McCall, and McNeely, Dean Rucker took the precautionary step of sending Rogers back to McCall to obtain a satisfactory explanation. After Rogers' second meeting with Logan, McCall and McNeely, the appeal progressed through Dean Rucker, Dr. Apple, an academic review board, and Dr. Campbell. The record indicates that Rogers was able to provide all information she thought relevant to the various faculty members that heard the appeal. The record also indicates that those faculty members carefully considered the information provided by Rogers before making their decisions. Aside from bare assertions, Rogers provides no evidence indicating a lack of careful and deliberate decisionmaking on the part of WSCC's faculty.

Moreover, because Rogers' interest in her nursing education is not protected by substantive due process, summary judgment was proper on her substantive due process claim. The Supreme Court has assumed *arguendo* the possibility of a substantive due process claim in the context of an academic dismissal from a state institution. *See Horowitz*, 435 U.S. at 91–92; *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222–23 (1985). However, in *Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003), this court rejected the notion that substantive due process protects a medical student's interest in continuing education. *Id.* at 249–51. After noting that the interests protected by substantive due process are much narrower than those protected by procedural due process, the court explained that

> [w]here . . . there is no equal protection violation, we can see no basis for finding that
> a medical student's interest in continuing her medical school education is protected
> by substantive due process. Certainly the contention that the medical college's

> actions were arbitrary or capricious cannot be sufficient; otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state or federal Administrative Procedure Act.

*Id.* at 251 (citation and footnote omitted). This court has, albeit in an unpublished opinion, applied the holding of *Bell* in a subsequent decision denying a substantive due process claim in the context of an academic dismissal. *See McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 436–37 (6th Cir. 2006). Like the plaintiff in *McGee*, Rogers "has not alleged any equal protection violation" and asserts an interest that is "virtually identical to the one asserted in *Bell*." *See id.* at 437. Summary judgment was therefore proper on Rogers' substantive due process claim.

For the foregoing reasons, we affirm.