*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID ROBERSON,

        *Plaintiff-Appellant,*

    *v.*

STATE OF TENNESSEE; EAST TENNESSEE STATE
UNIVERSITY; JAMES H. QUILLEN COLLEGE OF
MEDICINE,

        *Defendants,*

RONALD FRANKS, M.D.; PAUL STANTON, M.D.,
        *Defendants-Appellees.*

No. 03-6181

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 03-00198—J. Ronnie Greer, District Judge.

Argued:  September 14, 2004

Decided and Filed:  February 15, 2005

Before:  SUTTON and COOK, Circuit Judges; ALDRICH, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Samuel W. Brown, BECKER, FLEISHMAN, BROWN & KNIGHT, Knoxville,
Tennessee, for Appellant.  Brandy M. Gagliano, OFFICE OF THE ATTORNEY GENERAL,
Nashville, Tennessee, for Appellees.  **ON BRIEF:**  Samuel W. Brown, Arthur F. Knight III,
BECKER, FLEISHMAN, BROWN & KNIGHT, Knoxville, Tennessee, for Appellant.  Brandy M.
Gagliano, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by
designation.

———————————

**OPINION**

———————————

ALDRICH, District Judge.   This is a civil rights action, in which plaintiff David Roberson ("Roberson") appeals an order dismissing his complaint as untimely. Because the district court properly applied the applicable statute of limitations, we AFFIRM its decision.

**I. Background**

Roberson enrolled in the James H. Quillen College of Medicine at East Tennessee State University ("ETSU"), and matriculated on August 1, 1999. He was expected to graduate in May of 2003. Roberson's first year at ETSU went better than smoothly, as he was elected student body president and chosen by the administration to represent ETSU with the Association of American Medical Colleges ("AAMC").

During his first year of medical school, Roberson was diagnosed with attention deficit disorder ("ADD") and prescribed Ritalin and Adderall by his primary care physician. By his second fall semester, Roberson's symptoms were exacerbated by an increased academic workload, as well as the added pressure of his duties as student body president and AAMC representative. Roberson's physician increased his dosage of Adderall in response to the intensifying symptoms.

As his second year examinations approached, Roberson began to feel that, even in increased dosages, his ADD medication was not sufficiently addressing his symptoms. Roberson therefore altered his method of taking the medication, cutting his pills in half and ingesting them twice as frequently. Unbeknownst to Roberson, this method of taking Adderall can induce mania and amphetamine psychosis.

Roberson's dispute with ETSU stems from an allegation that he cheated on a take-home exam for the second year course in "practicing medicine." Roberson denies any intent to cheat, and in fact has no recollection of completing the exam, probably due to the onset of amphetamine psychosis. Roberson was assessed a failing grade on the exam in question, and in January 2001, he was brought before the College's Student Promotions Committee.

 Roberson now claims that he was not informed of any cheating allegation, but rather that he was summoned to appear before the Committee to discuss his receipt of a failing grade. He then alleges that the Committee "found him guilty of an honor code violation" without conducting any investigation or offering him the opportunity to defend himself. ETSU notes that Roberson was "placed on a leave of absence" as a result of this ruling. Roberson alleges that, by finding him guilty, the Student Promotions Committee usurped the authority of the school's Honor Council, which is charged with investigating and ruling on violations of ETSU's honor code.

In fact, the Promotions Committee informed the Honor Council of its "finding" on January 29, 2001. On February 20, 2001, the Honor Council concurred with the finding, but expressed an opinion that Roberson's violation occurred unintentionally, probably as a result of amphetamine psychosis. The Council found that any disciplinary action exceeding a formal reprimand would be excessive in Roberson's case.

Yet Roberson's leave of absence continued, and he spent the spring and summer of 2001 attempting to get his education back on track. Roberson checked himself into a rehabilitation program for assessment, and began seeing a psychiatrist. He also began to seek readmission to the ETSU medical program. Roberson claims that he repeatedly petitioned the medical school "informally and formally"– and on August 2, 2001, he again met with the Student Promotions

Committee. Roberson alleges that the Committee did not inquire about the honor code violation during this meeting, but that it denied him readmission from the leave of absence nonetheless.

ETSU did permit Roberson to attend classes during the Spring semester of 2002, pending another ruling on readmission by the Promotions Committee. However, Roberson was deemed "unsuitable to enroll" at a Committee meeting of February 14, 2002. Roberson alleges that this time he was "granted appeal rights, which he utilized."

Roberson then endeavored to obtain readmission by appealing to Dr. Ronald Franks, Dean of the ETSU College of Medicine, and the President of ETSU, Dr. Paul Stanton. On April 18, 2002, Dr. Franks signed a letter denying Roberson's request, and noting his violation of the school Honor Code. On May 22, 2002, Dr. Stanton similarly supported the adverse decision of the Promotions committee.

Roberson filed his complaint in federal court on May 22, 2003. The district court for the Eastern District of Tennessee dismissed the complaint, holding that it was untimely under the applicable statute of limitations. This appeal followed.

## II. Discussion

Roberson's appeal raises a single issue: whether his complaint was timely filed under the one-year limitations period applicable to civil rights actions filed in Tennessee under 42 U.S.C. § 1983.

The Court reviews *de novo* a district court's decision to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). In reviewing the ruling below, the panel must treat all well-pleaded allegations in the complaint as true. The panel must reverse the dismissal unless "it appears beyond doubt that [Roberson] can prove no set of facts" under which his complaint was timely filed. *Id.*

Because 42 U.S.C. § 1983 does not contain its own statute of limitations, the Court must look to state law to determine the appropriate limitations period. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Tennessee provides for a one-year limitations period for civil rights actions under § 1983. *See* TENN. CODE ANN. § 28-3-104(a)(3) (2004); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000), citing *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986).

The date on which the limitations period began is not counted in computing the length of time elapsed; thus Roberson's claim was timely if the period began to run on or before May 22, 2002. Roberson's complaint was untimely if the period began on any date prior to that. In determining when the limitations period began, the Court must refer to federal law. *Sharpe*, 319 F.3d at 266; *Sevier*, 742 F.2d at 272.

In *Sevier*, the Sixth Circuit articulated a familiar standard. "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 273 (citations omitted). Courts have taken a common-sense approach to this task, inquiring as "to what event should have alerted the typical lay person to protect his or her rights." *Hughes*, 215 F.3d at 548 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

The district court was correct in concluding that the typical lay person would have been alerted as to the need to protect his rights before May 22, 2002. While Roberson argues that the Student Promotions Committee had no authority to issue a final decision on his case, and therefore

that he had not "exhausted his administrative remedies" until Dr. Stanton issued his letter, it is clear that a typical lay person would have recognized the need to take legal action considerably earlier in the process.

Specifically, the district court determined the "summer of 2001" to be the latest date on which the limitations period could begin. It reasoned that the decisions of the Student Promotions Committee amounted to a final and formal dismissal from school, and that Roberson's efforts to informally petition various officials about reinstatement demonstrate an awareness that any alleged infringement of his rights had already occurred.

In response, Roberson seeks to downplay the involvement and authority of the Promotions Committee, arguing at length that the Committee can only "recommend" dismissal, and not order it. Roberson contends that Dr. Franks's letter of April 18, 2002, operated as an official acceptance of the Committee's "recommendation," and that Roberson was not put on notice of the need to protect his rights until Dr. Stanton "upheld" this acceptance. In support of these claims, Roberson cites several passages from the ETSU handbook in which the words "recommend" or "recommendation" are used in reference to the functioning of the Promotions Committee.

Roberson's argument is misplaced. It was not necessary, as he argues, for a decision of the school administration to "conver[t] a mere dismissal recommendation into a concrete expulsion" for Roberson to be aware of the need to protect his rights. Roberson acknowledges that his leave of absence was involuntary, and alleges that he was denied his right to appeal the decision placing him on leave. Whether this decision was made by the Promotions Committee (of right or by usurpation) or by a school official adopting the Committee's "recommendation" is of no import[1]. The fact remains that Roberson was aware of any alleged denial of his rights by the summer of 2001.

While Roberson was undoubtedly wise to utilize the appellate process provided to him following the denial of his plea for *reinstatement* in 2002, it is clear that his allegations under §1983 must include a discrete deprivation of rights finalized before this second process even began. As the Supreme Court explained in a similar (educational) setting, "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made."*Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980)(emphasis in original). *Cf. Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2nd Cir. 1992)("The fact that UVM allowed appellant to continue to take courses and undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run."); *Kessler v. Bd. of Regents*, 738 F.2d 751, 754 (6th Cir. 1984)(similar result in termination from employment context).

The district court did not err in selecting "the summer of 2001" as the date for the relevant decision. It is clear from the record[2], as well as from Roberson's own statements, that he was

---

[1]It bears noting, however, that while the Quillen College of Medicine's Student Handbook refers to Committee "recommendations" as being "forwarded" to the dean, it does not specify whether the dean is required to take any action in order to implement the actions "recommended." Handbook at 40; Joint Appendix at 74.

[2]The Student Handbook, though not otherwise a model of administrative clarity, is explicit in its classification of students "whose behavior is not in keeping with the standards of the medical profession" as subject to dismissal, a sanction named among the subcategories of "students whose registration is discontinued." Handbook 39-40; JA 73-74. Students such as Roberson, who are dismissed without "a specified date of expected re-enrollment," must receive approval of the Student Promotions Committee to *return to medical studies*." *Id.* at 74 (emphasis added).

Roberson's letter writing clearly occurred after he was dismissed, and after the Committee denied his request for re-admission. Under the language of the handbook, the letters to Drs. Frank and Stanton would be classified as "an appeal to other authorities," a step which "is available" following adverse Committee action and denial of reconsideration. *Id*. at 75.

dismissed from the ETSU medical program in February of 2001, and that the Student Promotions Committee denied him admission in August of 2001. Nor did the court err in construing Roberson's efforts following the execution of that decision (including "informal" petitions for reinstatement, as well as the letters to Dr. Franks and Dr. Stanton) as efforts at achieving a *post hoc* remedy.

A reasonable lay person would have acted to protect his rights following the August decision, at the very latest. Because Roberson did not file his complaint until May 22, 2003, the district court correctly dismissed the action as untimely.

### III. Conclusion

For the foregoing reasons, the decision of the district court dismissing Roberson's complaint is AFFIRMED.