**Sedley ALLEY, Plaintiff,**

v.

**William R. KEY, Criminal Court Clerk for the Thirtieth Judicial District, Defendant,**

**and**

**William L. Gibbons, District Attorney General for the Thirtieth Judicial District, Intervenor.**

**No. 2:06–CV–2201.**

United States District Court, W.D. Tennessee, Western Division.

April 20, 2006.

---

Paul R. Bottei, Nashville, TN, for Plaintiff.

Lenard Hackel, Law Office of Lenard Hackel, Brian L. Kuhn, Memphis, TN, for Defendant.

Heather C. Ross, Jennifer L. Smith, Nashville, TN, for Intervenor.

## ORDER OF DISMISSAL

MAYS, District Judge.

Plaintiff Sedley Alley ("Alley"), who is incarcerated under a sentence of death, brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant William R. Key ("Key"), in his capacity as Criminal Court Clerk for the Thirtieth Judicial District of Tennessee, has violated Plaintiff's rights under the Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States by refusing to produce evidence in Key's physical custody so that Plaintiff may conduct D.N.A. testing that he believes may tend to exonerate him.

By order of April 11, 2006, the Court permitted William L. Gibbons ("Gibbons") to intervene in his capacity as Attorney General of the Thirtieth Judicial District. The Court did so on the representation of Gibbons' counsel, the Attorney General of Tennessee, that Key was "merely a custodian" and that Gibbons "has a far more direct interest in defending and pursuing the State's interests in its criminal procedures and the finality of the decisions of its criminal justice system." [1]

On April 13, 2006, Gibbons filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) alleging lack of subject matter jurisdiction and failure to state a claim. On April 17, 2006, Key filed a Motion to Dismiss adopting Gibbons' Motion.

On April 18, 2006, the Court held a hearing which the parties attended and at which they had the opportunity to present proof, but did not. All parties agree that this case should be decided as a matter of law.

For the reasons set forth in this order, the Court grants Key's and Gibbons' Motions to Dismiss.

## I. BACKGROUND

Plaintiff is an inmate under sentence of death currently incarcerated at Riverbend Maximum Security Institution, in Nashville, Tennessee. A Shelby County jury convicted Plaintiff of the July, 1985 murder of Suzanne Marie Collins and sentenced him to death. *State v. Alley*, 776 S.W.2d 506 (Tenn.1989). Plaintiff's convictions and sentence were affirmed on appeal. *See id., cert. denied*, 493 U.S. 1036,

---

1. At the hearing of this matter on April 18, 2006, Gibbons' counsel asserted that neither Gibbons nor Key has authority to release the evidence in question and that it is, in fact, under the control of the judicial branch in Tennessee. Counsel did, however, concede that Gibbons would comply with the orders of the federal judiciary in this proceeding. Key's counsel has also expressed his client's willingness to produce the evidence, if ordered to do so. The participation of Gibbons and Key in this proceeding appears to guarantee, at least, that the Court has before it parties who have the evidence in their physical control, can release it if ordered, and will act vigorously to protect whatever interest the "State" may have.

110 S.Ct. 758, 107 L.Ed.2d 775 (1990). Plaintiff's initial attempt to obtain post-conviction relief was ultimately denied. *Alley v. State*, 958 S.W.2d 138 (Tenn.Crim. App.1997). Plaintiff was denied habeas corpus relief in the federal courts. *Alley v. Bell*, 101 F.Supp.2d 588 (W.D.Tenn. 2000), *aff'd*, 307 F.3d 380 (6th Cir.2002), *cert. denied*, 540 U.S. 839, 124 S.Ct. 99, 157 L.Ed.2d 72 (2003).

Plaintiff thereafter sought, and was denied, post-conviction relief in state court in the form of access to biological evidence for D.N.A. testing, pursuant to Tenn.Code. Ann. § 40–30–301 (et seq.). *See Alley v. State*, 2004 WL 1196095 (Tenn.Crim.App. 2004), *cert. denied*, 544 U.S. 950, 125 S.Ct. 1695, 161 L.Ed.2d 528 (2005).

Plaintiff's motion for equitable relief from the judgment of the District Court denying him habeas relief has been denied, *Alley v. Bell*, no. 97–3159, doc nos. 169 and 176, and Plaintiff is currently appealing those judgments to the Sixth Circuit. *See Alley v. Bell*, no. 05–6876. In light of the District Court's ruling on Plaintiff's motion for equitable relief, and despite the pendency of his appeal in that matter, the Tennessee Supreme Court has scheduled the execution of Plaintiff's death sentence for May 17, 2006. *State v. Alley*, M1991–00019–SC–DPE–DD (Tenn. March 29, 2006).

## II. THE INSTANT COMPLAINT AND MOTION

Plaintiff has filed suit under 42 U.S.C. § 1983, seeking access to evidence introduced at his trial so that he may subject it to D.N.A. testing to "exclude Plaintiff as having committed the homicide and/or provide information to identify the person(s) involved in Suzanne Collins' death." Amended Complaint at 6, ¶ 8. Thus, he seeks access to the evidence to demonstrate his actual innocence. Plaintiff avers that, despite the restrictions on a district

court's exercise of its habeas jurisdiction, this Court is not barred from exercising jurisdiction because the instant action does not question the validity of his conviction or sentence and does not seek his release from confinement. *See generally Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Plaintiff grounds his entitlement to the relief requested on numerous bases in the Eighth, Ninth, and Fourteenth Amendments to the Constitution.

Gibbons contends that the Court is barred from exercising jurisdiction because the action is the "functional equivalent of an application for a writ of habeas corpus brought without leave of the United States Court of Appeals for the Sixth Circuit." Memorandum In Support Of Motion To Dismiss and/or Opposition To Motion For Immediate Release Of Evidence ("Intervenor's Memorandum"), doc. no. 12 at 3. He also contends that Plaintiff's complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, because Plaintiff cannot demonstrate that Key's refusal to allow D.N.A. testing of the requested items deprives Plaintiff of a constitutionally protected right. *Id.* at 9–12. Gibbons further argues that Plaintiff's prior unsuccessful post-conviction pursuit of D.N.A. testing precludes the granting of relief in this matter based on collateral estoppel, *res judicata*, and the *Rooker–Feldman* doctrine. Finally, Gibbons contends that the statute of limitations applicable to this action bars Plaintiff's request for relief.

## III. ANALYSIS

### A. Jurisdiction

**This action is not the functional equivalent of a second or successive habeas corpus petition.**

■ Gibbons asserts that this Court lacks subject matter jurisdiction over

Plaintiff's suit because it is the functional equivalent of a second or successive application for habeas relief and is, therefore, subject to the pre-clearance requirements of 28 U.S.C. § 2244(b)(3)(A). Gibbons argues that the "injunctive relief [Plaintiff] seeks is designed solely and necessarily to undermine his state court conviction and/or sentence." Intervenor's Memorandum at 4. Because Plaintiff seeks access to evidence he believes will allow him to demonstrate his innocence, Gibbons concludes that granting Plaintiff the relief requested will "'necessarily imply the invalidity of his conviction or sentence'" because "he seeks federal judicial relief for the sole purpose of undermining the state court judgment under which he is confined." *Id.* at 5 (*quoting Heck,* 512 U.S. at 480, 114 S.Ct. 2364). *See also, Harvey v. Horan,* 278 F.3d 370 (4th Cir.2002) ("*Harvey* I"); *Harvey v. Horan,* 285 F.3d 298 (4th Cir. 2002) (denying petition for rehearing and rehearing en banc) ("*Harvey* II"); and *Kutzner v. Montgomery County,* 303 F.3d 339 (5th Cir.2002).

Plaintiff maintains that his suit is not, and should not be construed as, an action in habeas corpus. This is evident, he asserts, because "[s]hould [Plaintiff] receive the relief he is requesting, he will not be released immediately, nor will his conviction be overturned, nor his sentence reduced." Memorandum Of Law In Support Of Plaintiff's Complaint And Response To Intervenor's Motion To Dismiss ("Plaintiff's Memorandum"), doc. no. 13 at 5. Accordingly, Plaintiff argues, success on the instant motion "will not necessarily imply the invalidity of [Plaintiff's] convictions or sentences." *Id.* at 6 (*quoting Wilkinson v. Dotson,* 544 U.S. 74, 125 S.Ct. 1242, 1248, 161 L.Ed.2d 253 (2005)). *See also Osborne v. District Attorney's Office,* 423 F.3d 1050 (9th Cir.2005); *Bradley v. Pryor,* 305 F.3d 1287 (11th Cir.2002).

The issue appears to be one of first impression in this Circuit. There can be no doubt but that, with the instant action, Plaintiff hopes to set in motion legally significant events that will provide some relief from his present conviction and sentence. However, the standards governing this Court's determination about whether a § 1983 action is more properly construed as an action in habeas corpus are objective standards concerned with the nature of the immediate relief requested, not subjective inquiries into the Plaintiff's motive for seeking redress for alleged constitutional violations. *Harvey,* 278 F.3d at 383 (King, J., concurring). Where a judgment in favor of Plaintiff will not "necessarily imply the invalidity of his conviction or sentence," Plaintiff's cause of action is not one for habeas corpus relief. *Wilkinson v. Dotson,* 544 U.S. 74, 125 S.Ct. 1242, 1247–48, 161 L.Ed.2d 253; *Heck,* 512 U.S. at 487, 114 S.Ct. 2364. Were the Court to grant Plaintiff the relief requested, his underlying conviction and sentence would remain intact. Thus, success in this suit cannot call into question the validity of Plaintiff's conviction and sentence. If Plaintiff wishes to challenge his sentence and conviction on the basis of any subsequent D.N.A. testing of the specified pieces of evidence, he will, at least as far as the federal courts are concerned, be required to seek habeas corpus relief in an action wholly separate from the instant matter. Therefore, Plaintiff's § 1983 action is not the functional equivalent of an application for habeas corpus relief, and this Court may properly exercise jurisdiction under 28 U.S.C. § 1331.

## B. Preclusion and Statute of Limitations

### Plaintiff is not precluded from seeking the relief requested.

Gibbons contends that the Court should not exercise jurisdiction because: 1) the

Plaintiff is collaterally estopped from bringing this suit in the federal courts on the basis of his unsuccessful state court post-conviction action seeking access to certain items of evidence; 2) *res judicata* and the *Rooker—Feldman* doctrine bar Plaintiff from seeking the requested relief; and 3) the applicable statute of limitations has expired.

### 1. Collateral Estoppel

■ Collateral estoppel applies to preclude litigation of issues that have already been decided. *Hutcherson v. Lauderdale County, Tennessee,* 326 F.3d 747, 758 n. 3 (6th Cir.2003). The federal courts are required to give the same preclusive effect to a state court judgment as would any state court considering the same action. *Id.* at 758. Gibbons contends that Plaintiff is collaterally estopped from seeking access to the evidence requested. Gibbons premises his objection on his assertion that the issue posed, the Plaintiff's entitlement to specifically requested items of evidence, was previously decided by the state courts. Because Plaintiff was unsuccessful in his previous attempt to obtain certain items for D.N.A. testing, Gibbons now contends that issue preclusion bars Plaintiff from seeking to re-litigate the matter in the federal courts. He concludes: "Because the state criminal courts necessarily determined that there was NO reasonable probability of a finding of innocence or a more favorable sentence, the plaintiff is collaterally estopped from re-litigating the issue." Intervenor's Memorandum at 16.

Plaintiff responds that the issue he seeks to adjudicate is not whether a reasonable probability exists that he would have been found innocent or received a more favorable sentence if D.N.A. testing revealed exculpatory evidence, but, rather, whether he is deprived of his constitutional rights when the State denies him access to evidence for D.N.A. testing. He maintains

that this narrow issue has never been decided, much less discussed, in the state courts. Moreover, he asserts that the items of evidence requested in the instant suit are wholly separate from those at issue in his state court litigation and have, therefore, never been the subject matter of any prior suit.

■ Gibbons' reliance on collateral estoppel is misplaced. Only in the broadest sense are the issues between the previous state action and the present similar: Plaintiff here seeks access to evidence for D.N.A. testing. However, the real issue before the Court, Plaintiff's various theories of constitutional entitlement to the evidence, has not been litigated previously. A fair reading of the state court opinions indicates that Plaintiff's constitutional claims were not addressed by the state courts and were not relevant to the disposition of the post-conviction action. Rather, it appears that the state courts merely determined that Petitioner was not entitled to D.N.A. testing of the evidence pursuant to state statutory and case law. *See Alley,* 2004 WL 1196095 at *7–13. Thus, no state court has ruled on the constitutional issues before the Court. Therefore, Plaintiff's suit is not barred by collateral estoppel.

### 2. *Res Judicata* and *Rooker–Feldman*

■ *Res Judicata* applies to bar subsequent re-litigation of " 'all claims that were actually litigated or could have been litigated in the first suit between the same parties.' Four elements must be established before res judicata can be asserted as a defense: (1) the underlying judgment must have been rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits; (3) the same cause of action was involved in both suits; and (4) the underlying judgment

was on the merits." *Hutcherson*, 326 F.3d at 758 (citations omitted).

In arguing that the instant suit should be barred by *res judicata*, Gibbons again asserts that Plaintiff is merely seeking to replicate the previous state court action. He contends that Plaintiff seeks identical relief, against identical parties, that the subject matter is identical, and that the causes of action are identical to those previously raised. Thus, he concludes, the claims in this suit "were actually litigated or could have been litigated in the first suit." *Id.*

Plaintiff responds that the evidence identified in his Amended Complaint has never been the subject of any state-court claims. Furthermore, Plaintiff argues that the state courts refused to adjudicate the constitutional claims he now raises when they considered the other evidence.

■ Applying the elements of *res judicata* set forth above, the Court is satisfied that Plaintiff's claims are not precluded. The parties are not the same. The subject matter of the post-conviction proceedings is distinct from the subject matter of the instant suit, that is, the evidence sought is not the same. *Compare* Amended Complaint at 7 (identifying various pieces of physical evidence), *with* Petition For Post–Conviction DNA Analysis Pursuant To Tenn.Code Ann. § 40–30–301 Et Seq., exhibit 2 to Intervenor's Memorandum (seeking access for D.N.A. testing to numerous biological samples including hairs and swabs taken from the victim's body). The specific causes of action are not identical

where Plaintiff had no explicit basis for pleading any constitutional claims in the statutory action alleged to be preclusive. There is, therefore, no indication that Plaintiff's constitutional claims about the evidence then requested "could have been litigated." It was apparently discretionary whether the Tennessee courts would consider Plaintiff's constitutional claims in the state courts, and, exercising that discretion, the state courts chose not to adjudicate them. It would be inequitable to deny Plaintiff a federal forum for his constitutional claims because he was denied the previous opportunity to litigate those claims, through no fault of his own, when the state courts apparently refused to consider his invocation of constitutional protections.[2] Accordingly, *res judicata* does not preclude Plaintiff's action.

■ Plaintiff is not barred from seeking relief based on the *Rooker–Feldman* doctrine. The *Rooker–Feldman* bar is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005). Petitioner does not contend that the harm he suffers resulted from the previous state court judgment. He does not seek to have that judgment rejected. He merely seeks to have constitutional claims, which the state courts did not address, adjudicated insofar as those claims apply to evidence which was not before the

2. The Court notes that there is passing authority suggesting that the failure of the state courts to address Plaintiff's constitutional claims may not be alone sufficient to defeat the assertion of *res judicata*. In *Pittman v. Michigan Corrs. Organization*, 123 Fed.Appx. 637, 640 (6th Cir.2005), the federal plaintiff conceded that he raised constitutional claims in his previous state court litigation, as has

Plaintiff, but he argued that *res judicata* was inapplicable because the state courts "did not specifically address them." The Sixth Circuit was not persuaded: "[The Plaintiff] cites no authority, and we have found none, for his assertion that the state court's failure to address individually each of his issues means that they were 'not decided' for purposes of *res judicata*."

state courts and which was not relevant to the previous state court proceedings. The Court's decision on Plaintiff's constitutional claims cannot call into question the state law grounds forming the basis of the Tennessee courts' decision not to grant Plaintiff access to the evidence he previously requested. That evidence is not even the subject matter of this action. Therefore, the present action is not an "appeal" of the state court proceedings. Plaintiff's suit is not the " 'paradigm situation in which *Rooker–Feldman* precludes a federal district court proceeding.' " *Id.* at 1527 (citations omitted). Plaintiff's action is not barred by *Rooker–Feldman.*

### 3. It is unclear on this record whether Plaintiff's action is barred by the applicable statute of limitations.

■ Gibbons contends that, if Plaintiff's action is proper under § 1983 and is not subject to preclusion, it is barred by the applicable statute of limitations. In § 1983 actions, federal courts apply the relevant state statute of limitations, although "federal standards govern when the statute begins to run." *Sharpe v. Cureton,* 319 F.3d 259, 266 (6th Cir.2003)(*citing Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). Gibbons asserts that the applicable Tennessee statute of limitations is Tenn.Code Ann. § 28–3–104(a)(3), which imposes a one-year limitation on relief under federal civil rights statutes. *See Roberson v. Tennessee,* 399 F.3d 792, 794 (6th Cir.2005); *Sharpe,* 319 F.3d at 266. Plaintiff asserts that his action cannot be subject to § 28–3–104(a)(3) because he seeks access to D.N.A. testing and Tennessee does not impose a limitations period on post-conviction actions to obtain evidence for D.N.A. testing. *See* Tenn.Code Ann.

§ 40–30–303. Therefore, Plaintiff contends, there is no limitations period for his suit.

Plaintiff may not claim that his suit concerns only the constitutional violations he suffers at the hands of Key and then attempt to incorporate into his action the lack of limitations period for a state court action that he believes has not provided a forum for the constitutional claims he presently alleges. *See* Plaintiff's Memorandum at 28 n. 11 ("The message from the state courts in this case was clear: The PostConviction DNA Act does not permit the litigation of federal constitutional claims, and only permits the application of state law."). Plaintiff's theory, which this Court has accepted, is that this is a civil rights action under 42 U.S.C. § 1983. Plaintiff is bound by the Tennessee statute of limitations governing such actions in the state courts. *Roberson,* 399 F.3d at 794.

■ The question, therefore, is when the statute of limitations began to run. "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984) (citations omitted). In applying this test, courts seek to determine " 'what event should have alerted the typical lay person to protect his or her rights.' " *Roberson,* 399 F.3d at 794 (*quoting Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 548 (6th Cir. 2000)).

The Court's inquiry in this case is fundamentally complicated by the fact that the constitutional right of which Plaintiff asserts he has been deprived has never been recognized or defined by a court of binding authority.[3] The Court is left to consider

---

**3.** The only federal case recognizing and applying a constitutional right similar to any of

those claimed in this suit appears to be *God-*

the following question: Where the existence and contours of a constitutional right are speculative, how is a court to discern precisely when that right has been denied such that the plaintiff should know that the right he asserts needs protection?

Gibbons reasons that, at the latest, Plaintiff knew or should have known of any alleged injury based on his access to evidence by May 5, 2004, when the State of Tennessee moved to dismiss his state court petition seeking such access. Intervenor's Memorandum at 19. Thus, Gibbons contends, the statute of limitations for the instant action expired on May 5, 2005. Plaintiff asserts that the one-year limitations period was not commenced upon the filing of the State's motion in opposition to his state court petition because the evidence he now requests is separate and distinct from that requested in state court, and, further, that Key has only recently denied him access to the requested evidence, thus ripening his constitutional claims about the denial of access.

As discussed above, this Court must determine what event should have alerted Plaintiff, as a "typical lay person," that action was required to protect any constitutional right of access to evidence. *Roberson*, 399 F.3d at 794. It should have been clear to Plaintiff, in May of 2004, that

the State of Tennessee would not observe any constitutional right of access to evidence when the State refused to convey evidence upon his request in the state courts.[4] Moreover, that alleged constitutional deprivation was again apparent on May 17, 2004, when the Shelby County Criminal Court denied Plaintiff access to the evidence while refusing to consider his assertion of a constitutional right of access. The Tennessee Court of Criminal Appeals affirmed the judgment of the post-conviction court later that month, and, on October 4, 2004, the Tennessee Supreme Court denied permission to appeal. Finally, on March 28, 2005, the U.S. Supreme Court denied certiorari. At no point during this chain of events did Plaintiff seek to protect the claimed right.

The effect of the State's action on Defendant Key is more problematic. As Gibbons asserts in his Motion To Intervene, Key is a Shelby County employee and custodian of the evidence. He acknowledges physical possession. Demand was made on Key for the first time within one year of the filing of this complaint.

To the extent that mere denial of access to evidence is the constitutional harm of which Plaintiff complains, his action may be barred by the one-year statute of limitations applicable to actions under federal

---

schalk v. Montgomery County District Attorney's Office, 177 F.Supp.2d 366 (E.D.Pa. 2001). The District Court in *Godschalk* concluded that the due process protections recognized by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) entitled an inmate to evidence for D.N.A. testing in order to seek exculpatory evidence post-conviction. *Godschalk*, 177 F.Supp.2d at 370. Judge Luttig, expressing his "views" on the subject, has also speculated that there exists some postconviction right of access to D.N.A. testing of evidence. *Harvey II*, 285 F.3d at 310–20.

**4.** Plaintiff suggests in his memorandum, p. 23 n. 10, that the limitations period could not have commenced during the state-court pro-

ceedings because the specific evidence at issue there differs from the evidence at issue in this suit. A denial of access to the evidence requested in 2004 would constitute a constructive denial of the general right Plaintiff asserts. *See Harvey*, 278 F.3d at 384 (King, J. concurring). The operative inquiry is when Plaintiff should have known that action was required to protect his alleged constitutional right. Thus, because it is not likely that the State's position about the alleged right would have differed as to any evidence requested by Plaintiff, Plaintiff should have known that his purported constitutional right to access evidence was in jeopardy when the State first failed to grant his request for evidence.

civil rights statutes. Plaintiff has had at least constructive knowledge of the constitutional violation he alleges here since May, 2004, at the latest. His suit was filed on April 5, 2006. Tenn.Code Ann. § 28–3–104(a)(3).[5]

However, Plaintiff also argues that the limitations period has only recently been triggered by the ripening of his constitutional claims about clemency. *See* Plaintiff's Memorandum at 23 n. 10. Any supposition that the action is barred based on when Plaintiff knew that he would not be granted the evidence as a matter of right necessarily overlooks the amorphous nature of the right asserted by Plaintiff. *See generally Harvey*, 285 F.3d at 310–11 (Luttig, J., respecting the denial of rehearing en banc) (asserting that the post-conviction due process right to testing of D.N.A. evidence "*legitimately* draws upon the principles that underlay" a number of recognized procedural and substantive due process rights)(emphasis in original). Thus, to the extent that Plaintiff alleges constitutional harm independent of the mere denial of access—for instance, that he would be effectively denied the opportunity to present his case for clemency—the Court must determine whether there is any constitutional basis for the right of access to evidence that he asserts before determining whether all claims based on that right are time-barred. Therefore, the Court will consider whether Plaintiff states a cause of action for the violation of any constitutional right.

### C. Plaintiff's Constitutional Entitlement to the Release of Evidence

Plaintiff asserts that he is entitled to the release of the evidence requested pursuant to: 1) procedural due process; 2) substantive due process; 3) the due process right to the production of exculpatory evidence; 4) Eighth Amendment principles; and 5) the Ninth Amendment. Plaintiff's Memorandum at 11. Respondent maintains that no such constitutional right exists under any provision of the Constitution.

### 1. Procedural Due Process

 Plaintiff first contends that his right to procedural due process under the Fourteenth Amendment requires release of the requested evidence. Plaintiff asserts that, because he possesses a fundamental interest in his life, due process requires that he be allowed access to evidence which may allow him to preserve that life interest by demonstrating his innocence of the crime for which he is sentenced. Plaintiff maintains that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), establishes the analytical framework for his procedural due process claim. In *Mathews*, the Supreme Court held as follows:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893.[6] Applying that

---

**5.** Neither Alley nor Gibbons addresses whether equitable tolling of the statute of limitations is appropriate in this case, and, if so, how the Court should approach that analysis. Because this issue is not before the Court, the Court makes no ruling on it.

**6.** Plaintiff's reliance on the *Mathews* test presupposes that the life interest he asserts is subsumed within the sphere of the liberty interests the test normally serves to protect. The Court assumes that Plaintiff is correct. However, there were divisions on the Su-

test, Plaintiff concludes that the process to which he is entitled to protect his life interest is release of the evidence because "[h]is right to life is paramount, the release of evidence for DNA testing is of exceptional value because it will provide the most accurate determination of Plaintiff's innocence, and there is no burden on the government." Plaintiff's Memorandum at 15.

The *Mathews* test is relevant only to the extent that Petitioner is able to show that he has some legally recognized liberty or property interest in the evidence he requests. Plaintiff's argument fails because he cannot demonstrate that the life interest which he asserts bestows upon him "the post-conviction legal right to access or discover the evidence relating" to his conviction. *Harvey,* 278 F.3d at 388 (King, J., concurring). Plaintiff has no state law right to the evidence. As noted above, no court of binding or persuasive authority has concluded that federal law encompasses such a right. Thus, because Plaintiff can articulate no established legal right to the evidence, he is not entitled to process before being deprived of the evidence. Were the Court to recognize, without the aid of precedent or more clearly articulated reasoning, some post-conviction constitutional right to D.N.A. testing of evidence, the Court would lack a clearly defined right and a clear standard for its enforcement, leaving the development of the substance, form, and operation of the right to nothing more than the Court's prerogative. Although it is questionable whether any Court is capable of satisfactorily formulating such a right given the infinite possibilities of science and the idio-

syncracies of each case, this Court is particularly ill-suited to do so. Plaintiff cannot establish a legally recognized right to the evidence he requests. Therefore, the Court concludes that he has no procedural due process right to the release of the evidence.

### 2. Substantive Due Process

■ Plaintiff claims that he is entitled to the evidence under the substantive due process protections of the Fourteenth Amendment. Plaintiff grounds his substantive due process argument on two principles: 1) it "shocks the conscience" to withhold the evidence arbitrarily in this matter; and 2) Plaintiff's life interest must include the right to obtain evidence of his innocence for presentation in clemency proceedings. Plaintiff's Memorandum at 16.

■ In arguing that denying him access to the requested evidence "shocks the conscience," Plaintiff posits a number of essentially inapposite constitutional absolutes. *See* Plaintiff's Memorandum at 16–17. The operative inquiry confronting a court considering a substantive due process claim premised on the alleged "conscience shocking" behavior of some state official is whether her power is wielded egregiously or as an "instrument of oppression." *County of Sacramento v. Lewis,* 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citations omitted). Key's conduct in this matter does not "shock the conscience" where he simply retains the evidence for safekeeping and releases it only in accordance with state or federal law. Defendant does not

---

preme Court when it last spoke about whether and to what extent a death sentenced inmate retains a life interest protected by due process. *Compare Ohio Adult Parole Authority,* 523 U.S. at 281, 118 S.Ct. 1244 (Rehnquist, C.J., joined by three justices) (concluding that whatever residual life

interest remains after a death sentence is limited to protection from summary execution), *with id.* at 288–89, 118 S.Ct. 1244 (O'Connor, J., joined by three justices) (recognizing a broader life interest after a death sentence).

appear to have any power over the evidence which he could wield arbitrarily or oppressively. Because there is no demonstrable state or federal entitlement to post-conviction release of the evidence on demand, Key's refusal to do so cannot "shock the conscience." In effect, Plaintiff here seeks to have the Court construe a constitutionally protected right to access the evidence post-conviction, so that the Court may then conclude that a state actor who fails to acknowledge that right violates due process. For the reasons stated above, such an exercise of constitutional divination would be imprudently undertaken by this Court.

Plaintiff also contends that he has a substantive due process right of access to the evidence to establish his actual innocence during clemency proceedings. This argument is unavailing because, given that there is "no constitutional right to clemency proceedings," *Workman v. Summers*, 111 Fed.Appx. 369, 371 (6th Cir.2004), it cannot be argued persuasively that a potential clemency applicant is constitutionally entitled to what amounts to discovery for the preparation of a clemency application.

■■■ Plaintiff premises his argument on language from the Supreme Court's decision in *Herrera v. Collins*, 506 U.S. 390, 415, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), opining that clemency is the "fail-safe" mechanism in our criminal justice system for allowing the convicted to present judicially barred or frustrated claims of actual innocence. *See* Plaintiff's Memorandum at 18–19. Thus, Plaintiff reasons, due process requires that he have the "ability to establish his innocence to the Executive through the testing of the evidence at issue here." *Id. See also Harvey II*, 285 F.3d at 314 (Luttig, J., respecting the denial of rehearing). Although *Herrera* does recognize the historical role of clemency in the Anglo–American criminal justice sys-

tem, Chief Justice Rehnquist explains that clemency's role is not one of constitutional dimension, but, rather, of grace. 506 U.S. at 413–14, 113 S.Ct. 853. *See also Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 280–81, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). Thus, the Constitution does not "require [a] prisoner to show actual innocence through proceedings for executive clemency, but on the other hand not guarantee the ability to show actual innocence at such proceedings." Plaintiff's Memorandum at 19. The Constitution simply does not require clemency. To the extent that the Constitution requires judicial oversight of clemency proceedings, it requires no more than *"minimal* procedural safeguards," *Ohio Adult Parole Authority*, 523 U.S. at 290, 118 S.Ct. 1244 (O'Connor, J., concurring) (emphasis in original), to protect against arbitrariness in denying access to the process itself and ensuring that the executive's exercise of her clemency power is not grossly arbitrary, as in, for example, "flipping a coin" to determine the fate of the applicant. *Id.* The Court has never extended whatever *"minimal* procedural safeguards" are implicated in a state executive's exercise of her clemency power to include judicially mandated discovery of evidence. Therefore, because there is no substantive due process right of access to evidence to present claims in executive clemency proceedings or otherwise, such a right cannot be the basis for an action under § 1983.

### 3. The Due Process Right to Exculpatory Evidence

■■■ Plaintiff also contends that due process requires that the requested evidence be released to him because of his right to the disclosure of exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* held that "the suppression by the prosecution of evidence favorable to an

accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. The due process concerns of *Brady* are implicated where the prosecution's withholding of evidence denies the defendant a fair trial. *U.S. v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

■ This claim is unavailing. Plaintiff does not allege that the State failed to satisfy its *Brady* obligations regarding this evidence during his prosecution or that he has been denied a fair trial based on the refusal to grant access to the evidence. Plaintiff cannot show that the evidence would have been favorable to his defense at trial because it remains purely a matter of speculation whether the evidence Plaintiff requests will tend to exculpate or otherwise prove favorable to him. Thus, *Brady* and the due process principle it vindicates are not implicated and do not provide Plaintiff with a due process right to the post-conviction release of evidence related to his conviction. Therefore, *Brady* and its progeny cannot be the basis for this § 1983 action.

### 4. Eighth Amendment Principles

■ Plaintiff argues that he is entitled to release of the evidence pursuant to fundamental Eighth Amendment principles. He first contends that, accepting Justice O'Connor's premise that it is "constitutionally intolerable" to execute an innocent person, *see Herrera,* 506 U.S. at 419, 113 S.Ct. 853, the Eighth Amendment requires that he be allowed to access evidence to demonstrate his innocence during clemency. However, as Justice O'Connor subsequently made clear in *Herrera,* persons, like Plaintiff, convicted and sentenced to death are not entitled to any presumption that they are innocent. *Id.* at 420, 113 S.Ct. 853. Simply put, upon a

constitutionally sufficient adjudication of guilt, the convict may no longer invoke the protections afforded the presumptively innocent. *Id.* 419–20, 113 S.Ct. 853 ("Petitioner therefore does not appear before us as an innocent man on the verge of execution. He is instead a legally guilty one who, refusing to accept the jury's verdict, demands a hearing in which to have his culpability determined once again. Consequently, the issue before us is not whether a State can execute the innocent."). Despite Plaintiff's impassioned assertions of factual innocence, he remains, before this Court, legally guilty. Therefore, the question raised by Plaintiff's Eighth Amendment claim is not whether he will be executed despite his innocence, but, rather, whether the Eighth Amendment requires this Court to order that he be allowed access to evidence to present his claim of innocence more effectively in clemency proceedings. As discussed *supra,* whatever Constitutional protections are implicated when a state inmate petitions for executive clemency, they do not include the judicially mandated discovery of evidence. Accordingly, the Eighth Amendment does not require release of the evidence to bring claims of innocence in clemency.

■ Plaintiff also asserts that the Eighth Amendment requires release of the evidence because the failure to do so exhibits a "deliberate indifference" to the potential for harm to Plaintiff. Plaintiff's Memorandum at 21. He contends that "[w]hen a state actor clearly knows that evidence in his or her possession could establish an inmate's innocence, the person who fails to release that evidence is acting with deliberate indifference to the clearly foreseeable harm that the inmate will remain unjustly incarcerated and/or physically harmed by being executed—notwithstanding the inmate's actual innocence."

*Id.* The "deliberate indifference" thread of Eighth Amendment jurisprudence has developed to formulate a test for evaluating a prison inmate's claim that prison conditions violate the Eighth Amendment. The inquiry is whether prison officials have demonstrated a " 'deliberate indifference' to the inmates' health or safety." *Hope v. Pelzer,* 536 U.S. 730, 737–38, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citations omitted). The test has never been applied in the context which Plaintiff here asserts, that is, that a criminal court clerk acts with "deliberate indifference" in refusing to release evidence that state law forbids him from summarily releasing at his pleasure. Plaintiff's pursuit of the requested evidence has nothing to do with the conditions of his confinement or with the state officers charged with overseeing his confinement. Thus, his "deliberate indifference" argument is unavailing. Plaintiff's Eighth Amendment claims do not establish a constitutional right to the evidence.

### 5. Ninth Amendment

Plaintiff briefly proposes that the Ninth Amendment "provides him additional protections which entitle him to release of the evidence under the circumstances." Plaintiff's Memorandum at 22. Plaintiff cites no authority, nor is the Court aware of any authority, supporting his proposition about the sudden and sweeping reach he imputes to the Ninth Amendment. Therefore, this claim does not merit further consideration. Plaintiff's proposed Ninth Amendment right is unavailing.

## IV. THE ALLEGED IMPROPRIETY OF PLAINTIFF'S COUNSEL BRINGING SUIT

Gibbons contends that Plaintiff's counsel, an employee of the Federal Public Defender's Office, has engaged in the unauthorized private practice of law by filing this suit. Plaintiff's counsel was authorized to bring this action pursuant to the mandate of the federal statute under which he was appointed to represent Plaintiff during his federal habeas corpus proceedings. *See* 21 U.S.C. § 848(q)(8)(repealed and re-codified at 18 U.S.C. § 3599). There has been no unauthorized practice of law.

## V. CONCLUSION

Plaintiff's action is properly before this Court pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. However, Plaintiff's action fails to state a claim upon which relief can be granted. Accordingly, Key's and Gibbons' Motions To Dismiss are GRANTED.