NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 25 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIEL MARTIN,

    Plaintiff-Counter-
Defendant-Appellant,

  v.

CLARK COUNTY,

    Defendant-Counter-Claimant-
Appellee,

JOHN MARTIN; MARCUS McANALLY,

    Defendants-Appellees.

No. 22-16881

D.C. No.
2:19-cv-01623-APG-DJA

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted December 8, 2023
San Francisco, California

Before: COLLINS, FORREST, and SUNG, Circuit Judges.
Concurrence by Judge COLLINS.

    Plaintiff-Appellant Daniel Martin (Plaintiff), a Black man, sued Clark County,

the Department of Juvenile Justice Services director John Martin, and supervisor

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Marcus McAnally (collectively, Defendants) for race discrimination and retaliation after Plaintiff was fired from his position as a County juvenile justice probation officer. Plaintiff asserted claims under Title VII, 42 U.S.C. §§ 1981 and 1983, and Nevada state law. The County counterclaimed for breach of contract against Plaintiff, claiming that by filing this action he breached the parties' settlement agreement of Plaintiff's prior employment-discrimination action brought against the same defendants. The district court granted summary judgment for Defendants on all claims and awarded the County $1.00 in nominal damages on its counterclaim. Plaintiff appeals the rejection of his Title VII, § 1981, and Nevada state-law claims[1] and the judgment entered on the County's counterclaim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. **Race-Discrimination Claims.** We analyze Plaintiff's federal and state discrimination claims under the same framework. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (Title VII and 42 U.S.C. § 1981 cases are analyzed under the same standards); *Apeceche v. White Pine County*, 615 P.2d 975, 977 (Nev. 1980) (claim under Nev. Rev. Stat. § 613.330(1) analyzed under same structure as its federal counterparts). Plaintiff did not "offer evidence that 'give[s] rise to an inference of unlawful discrimination'" because he failed to demonstrate

___

[1]Plaintiff does not appeal the dismissal of his § 1983 right-to-equal-contractual-relations claim.

2

that similarly situated employees were treated more favorably. *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690–91 (9th Cir. 2017) (citation omitted).

Plaintiff claims that Supervisor McAnally, who is white, was similarly situated and received more favorable treatment.[2] This argument fails because "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir 2003). And even if the general rule did not apply, Plaintiff did not produce evidence that Supervisor McAnally "display[ed] similar conduct" by failing to cooperate or knowingly giving false or misleading information during an internal investigation. *Id.*

   **2.     *Retaliation Claims.*** We also apply the same analysis to Plaintiff's federal and state retaliation claims. *See Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 801 (9th Cir. 2003) (applying the Title VII framework to a § 1981 retaliation claim); *Pope v. Motel 6*, 114 P.3d 277, 281–82 (Nev. 2005) (the analysis of a retaliation claim under Nev. Rev. Stat. § 613.340 is the same as its federal counterparts). To prove retaliation, Plaintiff must establish, among other things, a causal link between his protected activity and an adverse employment action. *Bergene v. Salt River*

---

[2]Plaintiff also offers Juvenile Probation Officer Joseph Whitaker, who is also white, as a comparator. But the district court excluded evidence about Whitaker based on Plaintiff's failure to disclose him during discovery, and Plaintiff challenged that exclusion for the first time in his reply brief. Accordingly, we decline to consider this argument. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

*Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140–41 (9th Cir. 2001).

Despite Plaintiff's argument to the contrary, his protected activity was the action he took to protect his rights—filing his 2016 lawsuit—not settling that case. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (to establish a prima facie retaliation case a plaintiff must show that "he acted to protect his Title VII rights"). The 17 months between when Plaintiff filed his first lawsuit when he was fired, alone, is too remote to suggest causality. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that for temporal proximity to establish prima facie causation, the proximity "must be very close") (internal quotation marks and citation omitted); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."). Even if Plaintiff's pursuit of his lawsuit were protected activity, he settled that action eleven months before the adverse action. Under the circumstances, that lapse in time does not support an inference of causation. *See Manatt v. Bank of Am., NA,* 399 F.3d 792, 802 (9th Cir. 2003) (a nine-month lapse is insufficient to infer causation). And Plaintiff did not establish that a genuine dispute of material fact exists regarding Supervisor McAnally's involvement in Plaintiff's termination where his only evidence that Supervisor McAnally influenced the County's decision to investigate or terminate Plaintiff was Plaintiff's own

conclusory statements. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (An issue is genuine if "a reasonable jury could return a verdict for the nonmoving party."); *see also S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (a district court properly disregards a self-serving declaration that states only conclusions).

Similarly, Plaintiff failed to show that his difficulties with other juvenile probation officers, the rumors spread about him, and Supervisor McAnally's rude behavior was retaliatory harassment. Taken as a whole, these incidents are not sufficiently severe to establish an adverse employment action or a hostile work environment. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005) (general manager's "'snide remarks' and threats" were not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (citations omitted); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000) (supervisor's decreasing civility, hostile stares, and critiques of employee's performance did not preclude summary judgment against employee on retaliation claim). Moreover, Plaintiff has not shown an inference that these incidents were related to the filing of his 2016 lawsuit or that anyone involved—other than Supervisor McAnally—knew of his 2016 lawsuit. *See Bergene*, 272 F.3d at 1140–41.

***3.*** ***The County's Counterclaim.*** The parties agree that Plaintiff breached the agreement settling his 2016 lawsuit. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). Plaintiff argues that this settlement agreement is void because it violates public policy, is illegal, and is unenforceable. We disagree.

Plaintiff mistakenly appears to assert that the settlement agreement bars him from bringing a subsequent discrimination suit based on new events for which Plaintiff was not compensated or from being able to state facts necessary to support a new hostile-work-environment claim. The settlement agreement bars Plaintiff from bringing a subsequent suit "growing out of the incidents and allegations, which are the subject of [the 2016 lawsuit] and all *prior* [discrimination charges]." This agreement, for which Plaintiff received (and has not returned) $15,000, is enforceable. *See Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984) (a party to a settlement "cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle").

**AFFIRMED.**



*Martin v. Clark County*, No. 22-16881

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the majority's memorandum disposition to the extent that (1) it affirms the district court's summary judgment rejecting Plaintiff Daniel Martin's claim of a racially discriminatory hostile work environment; and (2) it upholds the summary judgment in favor of Clark County on the County's counterclaim for breach of the prior settlement contract. As to Plaintiff's remaining claims for race discrimination and retaliation, I agree with the majority that summary judgment was properly granted to Defendants. However, I rest that conclusion on different grounds, and I therefore concur only in the judgment as to those claims.

Even assuming *arguendo* that Plaintiff established a prima facie case of either race discrimination or retaliation with respect to his 2018 termination,[1] I conclude that Plaintiff failed to raise a triable issue as to whether Defendants' grounds for terminating him were pretextual. With respect to the issue of pretext, we have held that "it is not important" whether the proffered non-discriminatory and non-retaliatory grounds were "*objectively* false." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in original). Rather, what matters is whether the "employer honestly believed its reason[s] for its actions,

---

[1] I agree with the majority that the other actions cited by Plaintiff, apart from his termination, do not rise to the level of an adverse employment action. *See* Memo. Dispo. at 5.

even if its reason[s] [are] 'foolish or trivial or even baseless.'" *Id.* (citation omitted).

Here, the proffered grounds on which the County relied were (1) Plaintiff's alleged insubordination with respect to the kitchen serving line; (2) his allegedly dishonest responses during an investigation into that issue; and (3) his briefly leaving his work area, while on duty, without approval. Although Plaintiff vigorously contends that there are triable issues with respect to the correctness of the first two conclusions, he has failed to present sufficient evidence from which a reasonable jury could find that the decisionmakers who terminated him did not believe them. The first two allegations were the subject of an extensive investigation that was summarized in a 44-page single-spaced report that recounts the various witness statements and documentary and video evidence that supported these two conclusions and contradicted Plaintiff's version of events. Plaintiff contends that his version of those events is objectively more credible, but his arguments on this score provide no basis for inferring that the County decisionmakers did not believe the well-documented support provided for the first two allegations. As to the third ground, Plaintiff does not dispute that he briefly left his work area without express permission in order to get food, but he claims that pretext can be inferred from record evidence showing that the practice of leaving briefly during a double shift to get food was common and not typically

2

punished.  While this argument might have had some force if this ground stood alone as the sole ground for termination, here it is only a supplementary ground that has been combined with much more serious alleged misconduct.  Viewed in that context, this evidence is not enough to support an inference that the decisionmakers did not believe, and act on, the proffered grounds for termination.

Plaintiff further asserts that Defendant McAnally harbored race-based animus towards Plaintiff and that, although McAnally was not one of the County decisionmakers who terminated him, "McAnally's fingerprints are all over the case," and he acted as a "Cat's Paw" that influenced the entire decisionmaking process.  *See Acosta v. Brain*, 910 F.3d 502, 514–15 (9th Cir. 2018).  This theory fails because there is no evidence in the record, beyond Plaintiff's speculation, suggesting that McAnally influenced the decisionmaking process in this way.  Defendants affirmatively presented evidence that McAnally did not play any role in the termination decision, and Plaintiff failed to come forward with opposing evidence sufficient to create a genuine issue for trial on that point.

Because Plaintiff failed to show that there was a triable issue as to pretext, the district court properly granted summary judgment dismissing Plaintiff's claims that his termination was racially discriminatory or retaliatory.  On that basis, I concur in the judgment.